UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SAILOR INCORPORATED F/V | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | 2:03-CV-261 |
| | ) | |
| ROCKLAND, CITY OF | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

NOW COMES Defendant, City of Rockland, by and through its counsel, Welte & Welte P.A., and pursuant to Rule 56 F.R. Civ. P., and Rules 7 and 56, Rules of the United States District Court for the District of Maine, moves for partial summary judgment against Plaintiff, F/V SAILOR, INC. In support of this motion, Defendant relies upon the pleadings, deposition of Gary Hatch and the accompanying Affidavits of Joseph Lobley, with exhibits thereto, as cited in Plaintiffs Statement of Material Facts, annexed hereto and made a part hereof by reference. The grounds for this Motion are that there is no genuine dispute as to any material fact and that Plaintiff is entitled to judgment as a matter of law, for the reasons set forth below.

## FACTUAL BACKGROUND

As more fully set forth in Plaintiff's accompanying Statement of Material Facts (SMF), the relevant undisputed facts are as follows:

This is an action to recover damages arising out of the sinking of the F/V SAILOR on February 16, 2004 while moored alongside the Rockland City Fish Pier. SMF at ¶ 1.  Gary Hatch is the President and majority controlling shareholder of F/V SAILOR, Inc.  Dep. of Gary Hatch, Page 47, Lines 2-10. He holds himself out as a marine surveyor and has testified as such.  SMF at  ¶ 2.  The F/V SAILOR is, and was at the time of her sinking on February 16, 2002, a commercial fishing vessel owned by the Plaintiff, F/V SAILOR, Inc., and a documented vessel of the United States of America bearing Official Number 560093.  She was built of wood in 1974.  SMF at ¶ 3.  The F/V SAILOR was purchased by the plaintiff F/V SAILOR, Inc. in June of 2000 for $35,000.00. SMF at ¶4.  At the time of her sinking on February 16, 2002, the F/V SAILOR had no fish or catch aboard and was covered under a marine hull insurance policy for an "agreed value" of $50,000.00.  SMF at ¶ 5.  After the sinking the F/V SAILOR was sold to CAJEE, Inc. for $25,000 "as is where is"  SMF at ¶6.

The fair market value of the F/V SAILOR immediately prior to the sinking of February 16, 2002 was between $150,000.00 and $180,000.00.[1]  SMF at ¶ 7.  After the sinking plaintiff requested Wayfarer Marine, Inc. to provide F/V SAILOR, Inc. with an estimate of the repairs necessary to bring the F/V SAILOR back to its pre-sinking state. Wayfarer Marine, Inc. sent a team to inspect the vessel for purposes of generating the estimate, which totaled $187,543.00.  SMF at ¶ 8.  The amount of $187,543.00 is a

---

[1] Defendant admits to this value for purposes of this motion only as the source cited to is the Depositon of plaintiff's principal, Gary Hatch.  Defendant reserves the right to contest this value should that fact remain an issue at trial.

reasonable and accurate cost to put the F/V SAILOR back into the condition she was in prior to the sinking.[2] SMF at ¶ 9.

In this action, Plaintiff asserts an entitlement to, and is making claim for, damages over and above the fair market value of the vessel and which include lost profits, consequential damages, and out of pocket expenses. The total of the damages alleged is $603,291.00. SMF at ¶ 10. The cost of repairs that would have been necessary to return the F/V SAILOR to her pre-sinking condition exceeded the fair market value of the vessel immediately prior to the sinking. SMF at ¶ 11. The F/V SAILOR was a constructive total loss as a result of the sinking on February 16, 2002. SMF at ¶ 12.

## ARGUMENT

1. <u>Summary Judgment Standards</u>

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once a properly documented motion initiates the application of Rule 56, the party to whom the motion is directed can avoid entry of judgment only by showing that a trial-worthy issue exists. See *National Amusements v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995). Civil litigation is especially adaptable to the concept of summary judgment. *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314 (1st Cir. 1995); *Clapp v. Northern Cumberland Memorial Hospital*, 964 F. Supp. 503, 504 (D. Me. 1997). Piercing "the boilerplate of the

---

[2] Defendant admits to these costs for purposes of this motion only as the source cited to is the Depositon of plaintiff's principal, Gary Hatch. Defendant reserves the right to contest these costs should that fact remain an issue at trial.

3

pleadings and assay[ing] the parties' proof in order to determine whether trial is actually required" is the goal of summary judgment practice. *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 507 U.S. 1030, 113 S. Ct. 1845, 123 L.Ed.2d 470 (1993). The device allows courts and litigants to avoid full-blown trials in unwinable cases, thus conserving the parties' time and money and permitting courts to husband scarce judicial resources. *Clapp*, 964 F. Supp. at 504.

With respect to issues on which the summary judgment target bears the ultimate burden of proof, the Plaintiff must affirmatively point to specific facts that demonstrate the existence of an authentic dispute and cannot rely on an absence of competent evidence alone. See *Garside v.Osco Drug, Inc*., 895 F.2d 46, 48 (1st Cir. 1990). The contested fact must be "material" and the dispute over it must be "genuine;" not every factual dispute is sufficient to thwart summary judgment. *McCarthy*, 964 F.3d at 315. "Material" means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. See *United States v. One Parcel of Real Property with Buildings*, 960 F.2d 200, 204 (1stCir. 1992). "Genuine" means that "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party . . ." Id. In the final analysis, the trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor," *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990), but paying no heed to "conclusory allegations, improbable inferences, [or] unsupported speculation." *Medina-Munoz v. R. J. Reynolds Tobacco Co*., 896 F.2d 5, 8 (1st Cir. 1990). The motion for summary judgment may be granted if no genuine issue of material fact emerges.

*McCarthy*, 56 F.3d at 315.

    2. <u>The Substantive Law Applicable to This Matter is The General Maritime Law of The United States Of America</u>

The law applicable to this case is the general maritime law of the United States. This is so because a claim brought in a state court alleging a cause of action at common law will have the general maritime law applied to it so long as the action has a maritime claim as its underlying basis. *Pope and Talbot, Inc. v. Hawn*, 346 U.S. 406 (1953); *Butler v. American Trawler Co., Inc.*, 707 F. Supp. 29 (D. Me 1989) aff'd 880 F.2d 20 (1st Cir. 1989); *Doucette v. Vincent*, 194 F.2d 834, (1st Cir. 1952). This black-letter admiralty law is succinctly stated in *Doucette* as follows:

> [W]hen a common law action is brought, whether in a state or federal court, to enforce a cause of action cognizable also in admiralty, the substantive law to be applied is the same as would be applied by an admiralty court . . . 194 F.2d at 841-2.

It is clear that admiralty jurisdiction exists over actions arising out of the sinking of a vessel secured alongside a pier on navigable waters. *Sisson v. Ruby*, 497 U.S. at 363, 1990 AMC 1801 (1990); *Tug IRVING F. ROSS*. 1923 AMC 1015 (D. Mass. 1923)(serious doubt sinking of scow at slip could be considered non-maritime); If Plaintiff's cause of action is deemed to be based in contract, maritime law still applies. *Ex Parte Easton*, 95 U.S. 68, 72 (1877)("admiralty jurisdiction ... extends to all contracts, claims, and services essentially maritime, among which are ... wharfage."); *Sundance Cruises v. American Bureau of Shipping*, 7 F.3rd 1077 (2nd Cir. 1993); *Medema v. Gombo's Marina Corp.*, 1983 AMC 1611, 1612, 97 F.R.D. 14, 15 (N.D. Ill. 1982). In any event, since there is a maritime tort alleged, the Court need not determine the nature of the contract in this matter in order to apply the substantive maritime law. *OneBeacon Insurance Co. v. Great Lakes Inn*, 2003 AMC 339 (E.D. Wisc. 2002).

3.  DETERMINATION OF TOTAL LOSS

When a vessel is damaged in a collision or other marine casualty, the amount of recovery depends on whether she is deemed a total (or constructive total) loss or whether its partial damage justifies repair. See 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* §14-6, at 278 (1994). A vessel is considered a constructive total loss when the damage is repairable but the cost of repairs exceeds the fair market value of the vessel immediately before the casualty. See *Ryan Walsh Stevedoring Co. v. James Marine Services, Inc.*, 1987 AMC 1611,1987 AMC 1613, 792 F.2d 489, 491 (5 Cir. 1986). In such a case the market value of the vessel is the ceiling of recovery as repair is not economically practicable. *O'Brien Bros. v. The Helen B. Moran*, 1947 AMC 493,1947 AMC 500, 160 F.2d 502, 505 (2 Cir. 1947). 792 F.2d at 491. *Gaines v. Atlantia Tanker*, 2000 AMC 664 (5th Cir. 1999). See also *The CASANOVA*, 297 Fed. 658, 1924 A.M.C. 877.

4.  AS A MATTER OF LAW, PLAINTIFF'S DAMAGES ARE LIMITED TO THE FAIR MARKET VALUE OF THE VESSEL.

The rule in Admiralty cases is that the damages for a vessel that is a total loss are limited to the value of the vessel, excluding any claim for possible profits.  This has been the rule since at least 1897.  *The Umbria*, 166 U.S. 404, 421-22.  It has been routinely applied to fishing vessels. E.g., *Greer v. United States*, 1975 AMC 195, 198, 505 F.2d 90, 93 (5 Cir. 1974); *B & M Towing Co. v. Wittliff*, 1959 AMC 145, 148, 258 F.2d 473, 475 (5 Cir. 1958); *The Menominee*, 125 F. 530, 535 (E.D.N.Y. 1903).  The general rule was specifically adopted by the First Circuit in 1982.  *A & S Transp. Co. v. Tug Fajardo*, 1983 AMC 10, 12, 688 F.2d 1, 2 (1 Cir. 1982) (waste disposal barge). See also *DiMillo v. Sheepscot Pilots, Inc.*, 870 F.2d 746, 751, 1993 AMC 2699[DRO] (1 Cir. 1989).  There is

no exception to the rule for commercial fishing vessels. *ATLANTIC MARINER*, *Limitation Proeedings*, 2003 AMC 484 (D. Me. 2003). Specifically, damages for loss of use may not be awarded when the vessel is a constructive total loss. *Ryan Walsh Stevedoring*, *supra*.,1987 AMC at 1613.

## CONCLUSION

For the foregoing reasons, the court should grant Defendant's Motion for Summary Judgment and enter judgment declaring that as a matter of law, Plaintiff's damages are limited to the fair market value of the F/V SAILOR prior to her sinking.

DATED: April 14, 2004							By its attorneys,

/s/ William H. Welte
WELTE & WELTE, P.A.
13 Wood Street
Camden, Maine  04843
(207) 236-7786
weltelaw@adelphia.net
Bar # 3391

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2004, I electronically filed Defendant's Motion for Partial Summary Judgment with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Clayton N. Howard, Esq.
HOWARD & BOWIE, P.A.
One Main Street
P. O. Box 460
Damariscotta, ME  04543.

/s/ William H. Welte
WELTE & WELTE, P.A.
13 Wood Street
Camden, ME  04843
(207) 236-7786
weltelaw@adelphia.net
Bar No.: 3391

Admiralty\sailor\pleadings\motion for partial summary judgment.doc