**Exhibit B**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

```
* * * * * * * * * * * * * * * * * * * * * * * * * * *
                                                    *
F/V SAILOR, INC., a Maine Corporation, having       *
its principal place of business in Rockland, County *
of Knox, and State of Maine                         *
                                                    *
                    Plaintiff                       *    CIVIL NO. 2:03-CV-261
     v.                                             *
                                                    *
THE CITY OF ROCKLAND, MAINE,                        *
                                                    *
                    Defendant                       *
* * * * * * * * * * * * * * * * * * * * * * * * * * *
```

### AFFIDAVIT OF GARY HATCH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I, Gary Hatch, being duly sworn do depose and say that:

1. I am of legal age and competent to affirm the facts herein.

2. The within facts are of my own knowledge.

3. I am the principal shareholder/owner of the Corporation F/V Sailor, Inc. which owned the "F/V Sailor" vessel which sank at the Rockland Fish Pier on or about February 16, 2002. I personally oversaw the salvage and raising of the vessel on that same day.

4. I personally assisted in replacing the damaged planking to the hull of the vessel and the vessel was relaunched on or about March 14, 2002.

5. I was personally present during most of the inspections by Wayfarer Marine, and I have reviewed their estimates.

6. The estimates by Wayfarer Marine included "replacement of the main engine and reduction gear" at a cost estimate of "total $75,518.00". The main engine and reduction gear were not in fact replaced and were sold in running condition when the vessel was sold on or about September 29, 2002. The Wayfarer Marine estimate was based on a worse case scenario and it was not until sea trials could be conducted that a determination could be made with respect

to the main engine and the reduction gear. The estimated cost of those two items alone with labor came to over $75,500.00. If the Wayfarer estimate is reduced by $75,500.00 then the balance of the repairs would be approximately $112,043.00. The value prior to the sinking was at least $150,000.00, without permits or $340,000.00 with permits.

      7. Based upon my education, training, experience, expertise and also based upon surveys that I have conducted including/ my personal involvement in implementing, overseeing, and actually undertaking most of the repairs, it is my opinion that the cost of repairs necessary to restore the F/V Sailor to the condition she was in immediately prior to the sinking on February 16, 2002, did not exceed the fair market value of the vessel immediately prior to that sinking.

      8. It is my further opinion that the F/V Sailor was not rendered a constructive total loss due to the sinking of February 16, 2002.

      9. The F/V Sailor, at the time of the accident, held a limited access scallop permit that was issued by the National Marine Fisheries Service and authorized the vessel to fish 120 days in calendar year 2002. Because of the limited federal permit the vessel had to meet specific criteria with respect to horsepower, length, and net tonnage. The time involved in repairing F/V Sailor would have resulted in the vessel being out of service for most of the balance of the fishing year, and if that were the case then only ten days could be carried over to the next year so that the balance of the fishing year would have been lost and the next year would have only allowed us to fish approximately ten days. In order to avoid the effective loss of our fishing year, a replacement vessel was purchased that met the criteria of the permit and that replacement vessel cost approximately $360,000.00.

      10. On or about December 3, 2001, I had requested from my insurance agent that the "agreed value" of F/V Sailor be increased to reflect the extensive improvements I had recently made to the vessel, we agreed to initiate that process and to obtain a new vessel survey. However, before a new survey company could be arranged, the vessel sank.

      11. I was asked in a deposition if I considered the boat to be a total loss, and I answered "constructively, yes". In the discussions concerning settlement for the hull insurance policy, I was paid the amount of the hull insurance in full less the deductible because the estimated repairs at that time exceeded the insured value. I understood I was being paid the total amount as a constructive type loss, and I did not understand that term had a specific legal meaning beyond the insurance issue.

      12. My qualifications include conducting more than 50 vessels' surveys, over 40 years of fishing experience involving multi species, I've worked as an employee in boatyards and owner, captain and maintenance chief of numerous vessels during my more than 40 year career on the water and numerous vessels that I've conducted major overhauls and/or has undertaken the construction of the vessels myself.

Dated at Damariscotta, Maine on this 28th day of April, 2004.

/s/ Gary Hatch
Gary Hatch

STATE OF MAINE
Lincoln, ss.                                                                April 28, 2004

Personally appeared the above named Gary Hatch and acknowledged the foregoing to be his free act and deed.

Before me,

/s/ Christine L. Gove
Notary Public