UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SAILOR INCORPORATED F/V | ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO.: 2:03-CV-261 |
| ROCKLAND, CITY OF | ) ) ) | |
| Defendant | ) ) ) | |

**DEFENDANT'S REPLY MEMORANDUM TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW**

NOW COMES Defendant, City of Rockland, by and through its counsel, Welte & Welte P.A., and pursuant to Rule 56 F.R. Civ. P., and Rules 7 and 56, Rules of the United States District Court for the District of Maine, replies to Plaintiff's Memorandum in Opposition to Defendants Motion for partial summary judgment against Plaintiff, F/V SAILOR, INC. In further support of that motion, Defendant relies upon the pleadings, the deposition of Gary Hatch and the accompanying Affidavit of William H. Welte, with exhibits thereto, all as cited in Plaintiffs Reply Statement of Material Facts (hereinafter "RSMF"), annexed hereto and made a part hereof by reference. Despite Plaintiff's Opposition, Plaintiff is entitled to judgment as a matter of law, for the reasons set forth below.

FACTS

Gary Hatch, the majority shareholder of the Plaintiff, holds himself out as a marine surveyor and has testified as such. He has been designated by Plaintiff as an

Expert Witness in this action. SMF ¶2. In his deposition, Mr. Hatch stated unequivocally that the cost of repairs that would have been necessary to return the F/V SAILOR to her pre-sinking condition exceeded the fair market value of the vessel immediately prior to the sinking ¶11. He went on to state, without reservation, that the F/V SAILOR was a constructive total loss as a result of the sinking on February 16, 2002. SMF ¶12. In opposing the Defendant's motion, Gary Hatch has filed an affidavit that runs directly counter to this sworn deposition testimony. He now says that, in his opinion, the vessel was not a total constructive loss. ¶¶ 11, 12 Plaintiff's Response to Defendant's Statement of Material Facts ("RSMF"). The same affidavit raises the inclusion of fishing permits in ascertaining the vessel's fair market value. RSMF ¶7.

## ARGUMENT

Defendant submits that the deposition testimony of Plaintiff's principal cited in support of its SMF is binding on Plaintiff as an admission. *U.S. v. J.M. Taylor*, 166 F.R.D. 356, 360-361 (M.D.N.C. 1996); *Mitusi & Co. v. Puerto Rico Water Res. Auth.*, 93 F.R.D. 62 (D.P.R. 1981). A party should not be permitted to change or alter deposition testimony at a later stage in the proceeding. This obvious rule goes hand-in-hand with case authority establishing the Hatch affidavit as an impermissible response that should be stricken or disregarded by the Court as no satisfactory explanation for the difference in testimony has been provided.

> It is settled in the First Circuit that:
>
> [w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.

*Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 20 (1st Cir. 2000) citing *Colantuoni v. Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994); *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1297 (7th Cir. 1993); *Trans-Orient Marine v. Star Trading & Marine*, 925 F.2d 566, 572 (2d Cir. 1991); and *Davidson & Jones Dev. v. Elmore Dev.*, 921 F.2d 1343, 1352 (6th Cir. 1991). See also *Williams v. Raytheon Co.*, 220 F.3d 16, 18 (lst Cir. 2000). Other circuits make clear that filing an inconsistent affidavit should not serve to defeat summary judgment. *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996) (a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.); *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."); *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365-66 (8th Cir. 1983)(an affidavit which is inherently and blatantly inconsistent with prior deposition testimony may not be used to establish a question of fact in order to ward off a properly pled motion for summary judgment.); *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997).

The conditions to support the Court's disregard of an inconsistent affidavit under the rule set out in *Torres* are present in this case. First, in answering "constructively, yes" and simply "yes" to questions regarding the status of SAILOR as a total loss, Hatch answered the questions clearly and directly. ¶ 11, 12 SMF. He even agreed to the definition of "constructive total loss" as posed by counsel. ¶ 11, 12 SMF. Next, Defendant submits that the Plaintiff has not provided a satisfactory explanation as

to the reason for the blatant turnaround reflected at ¶¶ 11, 12 RSMF.  His explanation regarding a misunderstanding he had arising out of "discussions concerning settlement for the hull insurance policy" might suffice for a lay witnesses, but this is the testimony of Plaintiff's expert, a professed marine surveyor of substantial experience.  ¶12 RSMF, ¶2 SMF.  Absolutely no qualification regarding a now-claimed, lower, repair cost associated with saving the engine was made during deposition testimony regarding the Wayfarer Estimate dated March 7, 2002,  ¶8 SMF or on the insurance claim form, ¶_ Reply SMF.  At no time during his deposition testimony discussing his valuation of the vessel, did Mr. Hatch ever allude to the value of fishing permits as enhancing that value. ¶ 3 Reply SMF, ¶ 7 SMF.  On balance, the Defendant submits that the reversal evidence by the responsive pleadings on the key issue of market value and total loss was interposed solely for the purpose of defeating partial summary judgment and should be disregarded by the Court.

Defendant submits that Plaintiff has not provided a sufficient foundation for valuation of the fishing permits.   Even it he had, the inclusion of permits in the pre-sinking fair market value of the vessel is clearly not appropriate as a matter of law.  The goal sought to be achieved by a Court using the constructive total loss standard is to place the Plaintiff in the position he was in prior to the sinking (*restitutio in integrum*).  *The Baltimore*, 75 U.S. 377 (1869).   Plaintiff owned the permits for years prior to the time he transferred them to the SAILOR.  Reply SMF ¶ 14. After the sinking, Plaintiff again transferred the permits to his newest vessel, SHEARWATER.  Reply SMF, ¶15  The permits, and any value they may represent, were simply not lost to the Plaintiff.  Using

4

permits to increase the value of the vessel before the sinking would result in a double recovery or windfall to Plaintiff as he still has the use of them.

## LAW

Plaintiff has cited to case law in its reply suggesting reasons that the usual rule should not be followed in this situation. Defendant responds to each under separate headings below.

1. <u>Salvaged Value Not Relevant</u>

A vessel is "considered a constructive total loss *when the damage is repairable* but the cost of repairs exceeds the fair market value of the vessel immediately before the casualty. In such a case the market value of the vessel is the ceiling of recovery as repair is not economically practicable" (italics added). *Gaines v. Atlantia Tanker*, 2000 AMC 664, 666-667 (5th Cir. 1999). See also *O'Brien Bros. v. The Helen B. Moran*, 1947 AMC 493, 498, 160 F.2d 502, 505 (2d Cir. 1947). Whether or not a vessel is salvaged is, therefore, not relevant to the determination of whether she was a total constructive loss. The Plaintiff's damages in a constructive total loss situation are the fair market value of the vessel immediately prior to the sinking, *less* the salvage value. In other words, the salvage value of the vessel is deducted from the Plaintiff's damages in order that no double recovery ensues. This is in keeping with the goal of the Admiralty Court to put the Plaintiff back in the position he was in prior to the loss.

The cases relied upon by Plaintiff[1] represent exceptions where Courts have had to resort to other means of determining value:

> "At times, however, peculiar circumstances make it impossible to determine a 'market value'." *United States v. Toronto, Hamilton & Buffalo Nav. Co.*, 338 U.S. 396, 402, 1950 AMC 8, 12 (1949). When there is no

---

[1] Defendant could not locate *DNH Towing* as cited.

>market for the property in question, other means of measuring value
>become relevant. Id. The Court is persuaded that the instant case involves
>a situation where there is no market.

*Kingfisher v. N.P. Sunbonnet,*[2] 724 F.2d 1181,1187, 1984 AMC 1769, 1778, (5 Cir. 1984). Even Plaintiff does not here suggest that there was no market for SAILOR prior to her loss. That there was a market for the vessel is proved by its salvage sale after the sinking.

The other decision cited by Plaintiff, *Ryan Walsh Stevedoring Co. v. James Marine Services, Inc.*, 1987 AMC 1611,1987 AMC 1613, 792 F.2d 489, 491 (5 Cir. 1986) does not stand for the proposition that salvaging a vessel means it cannot legally be considered a total loss. Rather, that decision, which was cited by Defendant in its motion for partial summary judgment, states clearly the very law for establishing total loss as urged by Defendant. In *Ryan*, unlike here, there was simply a finding that the repairs did not exceed the fair market value.

    2. <u>Value Subjective/All Relevant Facts</u>

The authorities cited by Plaintiff under the above heading are, again, cases determining a value in those exceptional circumstances where there is no market. 2 Thomas J. Schoenbaum, Admiralty and Maritime Law §14-6., (1994), at 115 citing *Standard Oil v. Southern Pacific Co.*, 268 U.S. 146 (1925).

    3. <u>Repairs Already Made</u>

Unlike the decision cited, here there is no issue as to "what these costs were for and, particularly, how they related to the repair of the vessel." The only evidence on the

---

[2] This decision cited by plaintiff does underscore the situation presently before the Court when its notes: "If the court were to award damages for loss of use, Plaintiff's total award for the loss at issue here would total more than $300,000, an amount more than ten times the purchase price of the lost barge. The absurdity of this result offends the Court's sense of justice and precludes an award of damages for loss of use . . .

6

record as to the costs of repair is as set out in Defendant's SMF.  ¶9 RSMF merely contravenes prior deposition testimony.

    4.   <u>Abandonment Issue For Total Constructive Loss</u>:

The case cited to has limited application in a marine insurance context; "abandonment" does not come into play in this third-party action.

CONCLUSION

In deciding this motion, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor," *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990), but paying no heed to "conclusory allegations, improbable inferences, [or] unsupported speculation." *Medina-Munoz v. R. J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).  Given the unexplained inconsistencies in Plaintiff's affidavit and for the foregoing reasons, the court should grant Defendant's Motion for Partial Summary Judgment and enter judgment declaring that as a matter of law, Plaintiff's damages are limited to the fair market value of the F/V SAILOR prior to her sinking.

DATED:  May 17, 2004                             By its attorneys,

                                                                       <u>/s/ William H. Welte</u>
                                                                       WELTE & WELTE, P.A.
                                                                       13 Wood Street
                                                                       Camden, Maine  04843
                                                                       (207) 236-7786
                                                                       weltelaw@adelphia.net
                                                                       Bar # 3391

CERTIFICATE OF SERVICE

      I hereby certify that on May 17, 2004, I electronically filed DEFENDANT'S REPLY MEMORANDUM TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW AND DEFENDANT'S REPLY STATEMENT OF FACTS with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Clayton N. Howard, Esq.
HOWARD & BOWIE, P.A.
One Main Street
P. O. Box 460
Damariscotta, ME  04543.

                                          /s/ William H. Welte
                                          WELTE & WELTE, P.A.
                                          13 Wood Street
                                          Camden, ME  04843
                                          (207) 236-7786
                                          weltelaw@adelphia.net
                                          Bar No.: 3391

Admiralty\sailor\pleadings\Defendant's Reply Memorandum to Plaintiff's Opposition to Defendant's Motion summary judgment.doc